JaGONZALES, Judge.
On November 16, 1994, John Dawsey, a candidate for Washington Parish School Board District 5, filed an election suit naming as defendants Hayward Boone, the other candidate for the District 5 seat, and the Washington Parish School Board. Dawsey alleged that during the run-off voting for the School Board District 5 seat, the voting machine at ward 5, precinct 1 had not been operated properly, thus allowing voters who were not qualified to vote in the School Board District 5 race to vote for that seat.
Dawsey’s petition asked that the election be declared void, and that an order be issued for a restricted general election to be held for the School Board District 5 seat. The Washington Parish School Board filed “An Exception Of No Cause And No Right Of Action” on November 17, 1994. Mr. Boone filed an “Exception Of No Cause/Right Of Action” on November 21, 1994.
A hearing was held on November 21, 1994. At that time, the Washington Parish School Board was dismissed from the suit by motion of Mr. Dawsey. Further, the trial court overruled Mr. Boone’s exception of no cause of action and no right of action, and ruled in favor of Mr. Dawsey, ordering a re-vote of Precinct 5-1, pursuant to La.R.S. 18:1433.1. Mr. Boone filed this appeal on November 22, 1994.
*1189 On November 8, 1994, a run-off election was held for the District 5 seat. On that same day, a parishwide run-off election was held for the seat of Parish Assessor. Precinct 5-1, the voting site where the alleged illegal voting occurred,, is a split district, meaning that within that voting precinct some voters lived in District 5 and were qualified to vote in the School Board District 5 race; while other voters in that precinct lived outside of School Board District 5 and were eligible to vote in the Assessor’s race but were not qualified to vote in the School Board District 5 race. By means of a “lockout” lever on the voting machine, an election commissioner allows voters who lived outside of School Board District 5 to only vote in the Assessor’s race. Then, when a voter 13qualified to vote in the School Board District 5 race and the Assessor’s race enters the voting booth, the lever could be pulled again to allow that qualified voter to vote in both elections.
Gladys C. Johnson, the Registrar of Voters for Washington Parish, testified at the hearing that a total of 570 votes were cast in the School Board District 5 race at Precinct 5-1 for both candidates. By checking the signatures of the voters who lived in the precinct and voted in that race, she determined that only 404 of the voters who were eligible to vote in that race, actually voted. In addition, 51 voters eligible to vote in that election voted absentee, making the total number of voters who were eligible to vote in that election, and actually voted, 455. Based on those figures, the trial court calculated that 115 people who were not eligible to vote in the School Board District 5 race voted in that race in Precinct 5-1,[1]
According to the appellee’s brief, after votes from all the precincts were tallied, there were 654 votes for John Dawsey and 682 votes for Mr. Boone, with Mr. Boone winning the seat by a 28-vote margin.[2]
Mrs. Johnson further testified that her office was first notified of a problem at approximately 5:00 p.m. on the day of the eleetion, when Mr. Boone called her office to complain. She stated that from that point, the machine was properly handled and no further voting discrepancies occurred. She further testified that no complaint was made about the voting discrepancy that day other than the complaint by Mr. Boone.
Ms. Wanda Vamado, the commissioner in charge at Precinct 5-1, testified at the hearing that the failure to pull the “lock out” lever prior to 5 p.m. was inadvertent. She stated that she did not see well, and that “we could have been looking in the wrong column,” thus mistakenly reading a “5” in the wrong column to indicate that the voter | resided in School Board District 5 and thus was eligible to vote in that race. She testified that after the complaint was made at approximately 5:00 p.m., the proper procedure was thereafter followed utilizing the “lock out” lever.
Louisiana Revised Statute 18:1432(A) provides:
If the trial judge in an action contesting an election determines that: (1) it is impossible to determine the result of election, or (2) the number of qualified voters who were denied the right to vote by the election officials was sufficient to change the result in the election, if they had been allowed to vote, or (3) the number of unqualified voters who were allowed to vote by the election officials was sufficient to change the result of the election if they had not been allowed to vote, or (4) a combination of the factors referred to in (2) and (3) herein would have been sufficient to change the result had they not occurred, the judge may render a final judgment declaring the election void and ordering a new primary or general election for all the candidates, or, if the judge determines that the appropriate remedy is the calling of a restricted election, the judge may render a final judgment ordering a new election and specifying the date of the election, the appropriate candidates for the election, and the office or other *1190 position for which the election shall be held.
Louisiana Revised Statute 18:1433 provides:
Notwithstanding the provisions of R.S. 18:1432, if a discrepancy sufficient to change the result of the election between the total votes cast at an election and the votes counted for the candidates in the election occurs as a result of a voting machine malfunction, and an accurate count of the votes cast on the malfunctioning machine cannot be determined by the offering of circumstantial evidence or any other evidence, the court shall order a revote in the precinct where the voting machine malfunctioned, which shall be limited to those persons listed on the poll list as having cast their ballots in person at the polls in the election in which the machine malfunctioned. Those persons who cast their votes by absentee ballots in that election shall not be eligible to vote in the revote election. The votes east by absentee ballot in the first election shall be retained, counted, and added to the voting machine totals in the revote election.
Louisiana Revised Statute 18:1433.1, which the trial court relied upon in ruling in Mr. Dawsey’s favor, provides:
A. Notwithstanding the provisions of R.S. 18:1432, if a discrepancy sufficient to change the result of the election between the total votes cast at an election and the votes counted for the candidates in the election occurs as a result of any precinct containing multiple election districts in which votes were counted in the wrong election district, the court shall order a revote for that election in the precinct or precincts containing multiple election districts.
B. The revote shall include all candidates listed on the ballot in the Ischallenged election for the disputed office. The revote shall be limited to those persons listed on the poll list as having cast their ballots in person at the polls in the election in which the discrepancy occurred.
C. Those persons who cast their votes by absentee ballots in that election shall not be eligible to vote in the revote election. The votes cast by absentee ballot in the first election shall be retained, counted, and added to the voting machine totals in the revote election.
Louisiana Revised Statute 18:565 provides in pertinent part:
A. Grounds for challenge. A commissioner, watcher, or qualified voter may challenge a person applying to vote in a primary or general election on the ground that:
(1) The applicant is not qualified to vote in the election,
(2) The applicant is not qualified to vote in the precinct, or
(3) The applicant is not the person whose name is shown on the precinct register.
B. Disposition of record of challenge. The original record of the challenge, signed by the challenger, shall be placed in the envelope marked “Put in Voting Machine” and shall be preserved as part of the election returns. The duplicate record of the challenge shall be attached to the precinct register.
Louisiana Revised Statute 18:1434 provides as follows:
An objection to the qualifications of a voter or to an irregularity in the conduct of the election which, with the exercise of due diligence, could have been raised by a challenge of the voter or objections at the polls to the procedure is deemed waived.
After a thorough examination of the record and the applicable law, we find that La.R.S. 18:1432, La.R.S. 18:1433 and La.R.S. 18:1433.1 all set out criteria for an election challenge. However, overriding all of these requirements necessary to an election challenge is the “due diligence” required by La. R.S. 18:1434. Mr. Dawsey failed to object to an irregularity in the conduct of the election, which, with the exercise of due diligence as required by La.R.S. 18:1434, could have been raised by a challenge of the voter or objections at the polls to the procedure; therefore, his objection is deemed waived.
*1191 Mr. Dawsey testified in part on direct examination:
IsQ. Okay, sir. Did you have a poll watcher at that particular poll?
A. Part of the day.
Q. And when did that poll watcher go there, sir?
A. Approximately 4:00 o’clock [sic].
Q. 4:00 o’clock [sic] in the afternoon?
A. Yes, sir.
Q. Can you tell me, sir, the total difference between yours and Mr. Boone’s vote was what, sir?
A. 28 votes.
Q. When did you first — when you were first told, discover or determine that there were some discrepancies as far as the votes at 5-1?
A. When my poll watcher came to my house after the election that night.
Q. And did you, at that point, talk with Ms. Johnson and the others?
A. I called Mr. Johnny Crain, at that time, to find out what the problem was.
Mr. Dawsey testified in part on cross-examination:
Q. Prior to this election, were you in possession of a voter registration list from the Registrar of Voters office?
A. Yes, sir. I purchased one at the first of the election back in August.
Q. And that voter registration list told you what individuals were qualified to vote in your district and which individuals were not qualified to vote in your district; is that correct.
A. That is correct.
Q. Now, if you are in possession of this list prior to the election and if one of your poll watchers had that list at the precinct in question, when an individual came in and their name was called out, your poll watcher could have made an instant determination at that moment whether or not that individual was qualified to vote in your particular school board race; is that a fair statement?
A. I think it’s fair to say.
The above testimony indicates an admitted lack of due diligence on the part of Mr. Dawsey. Mr. Dawsey and his poll watcher knew that voters not qualified for the School Board election could vote in the Assessor’s race. Due diligence required some ^identification of each voter’s School Board district along with a determination that those voters qualified to vote only in the Assessor’s election had been “locked out” by the commissioner. A simple observation would have revealed a total absence of any sort of implementation of the “lock out” safeguards. Although he was in a position to timely challenge the irregularity, he did not choose to do-so. This court is of the opinion that the plaintiff cannot, under La.R.S. 18:1434, know of objections to voter qualifications and/or irregularities in the conduct of the election, await the outcome of an election and then, after losing the election, contest or complain of those objections to voter qualification and irregularities. Paul v. Robicheaux, 370 So.2d 588, 589 (La.App. 1st Cir.), unit refused 357 So.2d 560 (1978). In our opinion, the contestant’s failure to challenge the qualifications of the electors in writing and according to the procedure mandatorily required by the cited statutes, prevents him from raising the question of the disqualification by reason of non-residency after he has lost the election. Dumas v. Jetson, 462 So.2d 266, 271 (La.App. 1st Cir.1984), quoting Timberlake v. Lindsey 140 So.2d 406 (La. App. 3d Cir.1962).
For the foregoing reasons, the judgment of the trial court is reversed. Costs are assessed against the plaintiff, Mr. Dawsey.
REVERSED.

. We note that Mrs. Johnson’s testimony was confusing, however, the court’s calculations appear to be correct.

. We note that the record does not contain the total votes received by each candidate in Precinct 5-1.