# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 07-1487

**GLENN LIPSEY**

**VERSUS**

**JAY DARDENNE, LA. SECRETARY OF STATE**

**********

APPEAL FROM THE
SEVENTH JUDICIAL DISTRICT COURT
PARISH OF CONCORDIA, NO. 43042
HONORABLE SHARON I. MARCHMAN, DISTRICT JUDGE

**********

## ULYSSES GENE THIBODEAUX
## CHIEF JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Billy Howard Ezell, and James T. Genovese, Judges.

**AFFIRMED.**

Carey T. Jones
P. O. Box 700
Denham Springs, LA 70727-0727
Phone: (225) 664-0077
COUNSEL FOR:
    Defendant/Appellee - Randy Maxwell

Jack H. McLemore, Jr.
P. O. Box 520
Vidalia, LA 71373
Phone: (318) 336-9189
COUNSEL FOR:
    Defendant/Appellee - Randy Maxwell

Brady D. King, II
McNEW, KING, MILLS, BURCH & LANDRY, L.L.P.
1904 Royal Avenue
Monroe, LA 71201
Phone: (318) 361-3140
COUNSEL FOR:
    Plaintiff/Appellant - Glenn Lipsey

**Stephen D. Hawkland**
**8459 United Plaza Boulevard**
**Baton Rouge, LA 70809**
**Phone:  (225) 287-7475**
**COUNSEL FOR:**
 **Defendant/Appellee - Jay Dardenne**

**Sheri Lynn Marcus Morris**
**8440 Jefferson Highway - Suite 301**
**Baton Rouge, LA 70809**
**COUNSEL FOR:**
 **Plaintiff/Appellant - Glenn Lipsey**

**Clinton Andrew Magoun**
**P. O. Box  397**
**Ferriday, LA 71334**
**Phone:  (318) 757-8600**
**COUNSEL FOR:**
 **Plaintiff/Appellant - Glenn Lipsey**

**THIBODEAUX, Chief Judge.**

Plaintiff-appellant, Glenn Lipsey (Lipsey), lost the October 20, 2007, primary election for Sheriff of Concordia Parish by twenty-one votes to the incumbent Sheriff, Randy Maxwell. Lipsey filed a Petition to Contest Election and a subsequent amended and supplemental petition, challenging the qualifications of multiple voters and alleging the occurrence of various voting irregularities and fraud in multiple precincts. He sought to nullify the October 20, 2007, election and the scheduling of a new election. After a trial of the matter, Judge Ad Hoc, Sharon Marchman,[1] found that nine votes were improperly cast, but held that the differential was insufficient to change the results of the election. The trial court also found that Lipsey failed to carry his burden of proof on the remaining allegations of fraud and voting irregularities. Lipsey's petition was dismissed.

---

[1] Judge Sharon I. Marchman of the Fourth Judicial District Court, Parishes of Quachita and Morehouse, was appointed Judge Ad Hoc over this matter by the Louisiana Supreme Court because of the recusal of the judges of the Seventh Judicial District Court.

This appeal ensued in accordance with La.R.S. 18:1409.[2]  For the following reasons, the judgment of the trial court is affirmed.

## I.

## ISSUES

1.    Did the trial court err in disallowing Lipsey to amend his petition, after the nine-day filing deadline, to add names to the list of voters whose qualifications were being challenged?

2.    Did the trial court err in ruling that Lipsey's failure to determine voter qualifications either prior to or during the election constituted a lack of due diligence, therefore waiving Lipsey's post-election challenges to the qualifications of all except sixteen voters?

3.    Did the trial court err in finding that the challenges to the residency status of eight voters were meritless?

4.    Did the trial court err in finding that three nursing home residents were properly qualified voters

---

[2]Louisiana Revised Statutes 18:1409, relative to appeals, states:

**§1409.  Trial; decision; appeal**

. . . .

D.  Within twenty-four hours after rendition of judgment, a party aggrieved by the judgment may appeal by obtaining an order of appeal and giving bond for a sum fixed by the court to secure the payment of costs.  The clerk of the trial court shall give notice of the order of appeal to the clerk of the court of appeal and to all the parties or their counsel of record.  The trial judge shall fix the return day at a time not to exceed three days after rendition of judgment.

E.  The clerk of the trial court shall prepare the record on appeal and transmit it to the clerk of the court of appeal on the return day.

F.  Immediately upon receipt of the record the clerk of the court of appeal shall notify the parties and the case shall be heard no later than forty-eight hours after the record is lodged with the court of appeal.  Judgment shall be rendered within twenty-four hours after the case is argued.  The court of appeal shall indicate the date and time rendered on the judgment.  The clerk of the court of appeal shall immediately notify all parties or their counsel of record by telephone and/or facsimile transmission of the judgment.

pursuant to the La.R.S. 18:1331, et seq., Special Program for Handicapped Voters?

5.     Did the trial court incorrectly find that voter, Kay Hawkes, was not a full interdict and was, therefore, qualified to vote?

6.     Did Lipsey prove the occurrence of voting irregularities and offenses at the precincts that made it impossible to determine the outcome of the election?

## II.

## FACTUAL BACKGROUND

In accordance with La.R.S. 18:1405(B), within nine days of the election contest, Lipsey filed a timely Petition to Contest Election against defendant-appellee, Secretary of State Jay Dardenne. He challenged the qualifications of more than eighty voters and alleged irregularities and fraud in the conduct of the election due to: the payment of money and/or consideration to certain voters; the prevention of qualified voters from casting absentee ballots or ballots at the polls; and voting machine malfunctions resulting in errors in counting the number of ballots cast. Intervenor, Sheriff Maxwell, filed exceptions of vagueness, no cause of action, peremption, and a motion to strike. A First Amended, Supplemental, and Restated Petition to Contest Election and accompanying motion was filed by Lipsey. Sheriff Maxwell filed an Exception of Peremption.

At the commencement of the trial, the trial court granted Lipsey's motion to amend the petition only to the extent that the amendments and supplementation narrowed the issues and claims presented. The court denied any amendments expanding the original claims and, consequently, disallowed the listing of nine additional voters whose qualifications were being challenged and the listing of seven additional precincts. The remaining exceptions were overruled.

3

After three days of testimony, the trial court rendered a judgment, dismissing Lipsey's Petition to Contest Election. In its Written Reasons for Judgment, the trial court thoroughly addressed each of Lipsey's claims. Lipsey now seeks a reversal of the trial court's judgment, the nullification of the October 20, 2007, election, and the calling of a new election.

III.

## LAW AND ARGUMENT

*Amendment of Petition*

Lipsey contends that the trial court erred in not granting in entirety his motion to amend the Petition to Contest Election. He contends that the trial court erred in disallowing his amended petition to the extent that it contested new and different voters who were not named in the original petition. Applying the abuse of discretion standard of review, we find no error in the ruling of the trial court.

The record reveals that the motion to amend and First Amended, Supplemental, and Restated Petition to Contest Election was filed on November 9, 2007, a week after the statutory deadline for filing a petition to contest an election.[3] The amendments sought to delete several voter-qualification challenges and also to add names to the list of voters being challenged and precincts to the list of locations where alleged voting irregularities took place.

---

[3]Louisiana Revised Statutes 18:1405(B) states:

**§ 1405.  Time for commencement of action**

. . . .

   B.  An action contesting any election involving election to office shall be instituted on or before 4:30 p.m. of the ninth day after the date of the election, and no such contest shall be declared moot because of the performance or nonperformance of a ministerial function including but not limited to matters relating to the printing of ballots for the general election.

Relying on La.R.S. 18:1405(B) and jurisprudence holding that this statute sets forth a nine-day peremptive period for filing such an election challenge, the trial court declined to allow the expansion of the pleadings. *See Small v. Desselle*, 520 So.2d 1167 (La.App. 3 Cir. 1987). Louisiana Revised Statutes 18:1406(B) provides that "[t]he trial judge *may* allow the filing of amended pleadings for good cause shown and in the interest of justice." (Emphasis added). The trial court possessed the discretion to determine whether any such amendments would be allowed outside the nine-day peremptive period and based upon our review of the record, we cannot say that the trial court's ruling was an abuse of that discretion.

*Due Diligence*

Lipsey claims that the trial court erred in finding that he failed to exercise due diligence to determine the qualifications of voters prior to or during the election and, consequently, erred in dismissing his challenges to the qualifications of all but sixteen voters. We find no manifest error in the trial court's ruling.

The trial court correctly recognized that the Election Code requires that challenges to voter qualifications or to irregularities in the conduct of an election be made either before or during an election. *See* La.R.S. 18:1434.[4] The only exception to this is for objections to voters who should have been removed from the voter registration rolls due to death. *Id.*; La.R.S. 18:173. The burden is on the candidate to challenge possibly unqualified voters prior to votes being cast if due diligence

---

[4]Louisiana Revised Statutes 18:1434 states:

**§ 1434. Waiver of objections to voter qualifications when voter is not challenged at the election.**

An objection to the qualifications of a voter, except for an objection to a voter who should have been removed from the voter registration rolls pursuant to R.S. 18:173, or to an irregularity in the conduct of the election, which with the exercise of due diligence could have been raised by a challenge of the voter or objections at the polls to the procedure, is deemed waived.

would have allowed for the discovery of this information. *See Dawsey v. Boone*, 94-2388 (La.App. 1 Cir. 12/1/94), 647 So.2d 1188, *writ granted*, 94-2938 (La. 12/9/94); *Davis v. McGlothin*, 524 So.2d 1320 (La.App. 3 Cir.), *writ denied*, 525 So.2d 1046 (La.1988). A candidate is not allowed to await the outcome of an election and, if unsuccessful, then object to voter qualifications. *Dawsey*, 647 So.2d 1188.

Based on the testimony and evidence presented at trial, Lipsey acquired knowledge of voter qualification issues as early as 2003, following his first run for Sheriff, yet took no action to investigate those voters prior to the 2007 election. We agree with the trial court that this prior experience of running for office, the voter qualification issues that were raised subsequent to that election, in addition to his status as a retired, fifteen-year resident Louisiana State Trooper with knowledge of the parish, should have put Lipsey on notice that voter qualifications should be investigated prior to the election. His challenges were to the qualifications of less than 100 voters, the majority of whom were purported employees, or relatives of employees, of the incumbent Sheriff's Department. None of his challenges was to registered voters who should have been removed from the voter rolls due to death. Lipsey also testified at trial that he had approximately forty volunteers who assisted him in his investigation of questionably-qualified voters after the election.

We, accordingly, find no error in the trial court's ruling, which found that Lipsey failed to exercise due diligence as to those challenges raised in paragraph 9(a) of his petition, except for the sixteen who were challenged prior to the election or at the polls. We further adopt the trial court's written reasons for judgment on this issue, in support of our finding.

6

*Proof of Residency*

Lipsey asserts that the trial court erred in finding that eight of the sixteen challenged voters were residents of the parish and were qualified to vote. Voter registration in Louisiana is determined by a citizen's residency status. La.R.S. 18:101(A)(B).[5] The burden rested with Lipsey to prove the lack of residency of the voters at issue. *See Davis*, 524 So.2d 1320.

We adopt the reasoning of the trial court in regard to the findings that the following persons were qualified voters of Concordia Parish for the October 2007 Sheriff's election: Lee and Lucy Ford; Deborah P. Gee; Amy Ivy; Gregory and Katrina N. Jackson; Anthony B. Nettles; and Vernon E. White. We find no error in the trial court's application of the law regarding the determination of residency status

---

[5]Louisiana Revised Statutes 18:101(A) and (B), state:

**§ 101. Registration to vote; qualifications; more than one residence; presidential elections**

A. (1) Every citizen of Louisiana who is at least eighteen years of age or will attain that age on or before the next election, is an actual bona fide resident of this state, and the parish, municipality, if any, and precinct in which he offers to register as a voter, is not disfranchised, and who complies with the provisions of this Chapter shall be eligible to register to vote in local, state and national elections held in this state.

(2) Any person age seventeen and who is otherwise qualified to vote may register to vote at any time prior to the first election at which he shall have attained the age of eighteen years. However, no one, under the age of eighteen years shall be permitted to vote in any election.

B. For purposes of the laws governing voter registration and voting, "resident" means a citizen who resides in this state and in the parish, municipality, if any, and precinct in which he offers to register and vote, with an intention to reside there indefinitely. If a citizen resides at more than one place in the state with an intention to reside there indefinitely, he may register and vote only at one of the places at which he resides. However, if a person claims a homestead exemption, pursuant to Article VII, Section 20 of the Constitution of Louisiana, on one of the residences, he shall register and vote in the precinct in which that residence is located. For purposes of voter registration and voting, the residence of a married woman shall be determined in the same manner as is required for any other citizen. A citizen of this state shall not be or remain registered or vote in more than one place of residence at any one time.

for purposes of voter registration and find that much of the trial court's conclusions were based on credibility determinations regarding witness testimony. The trial court's reasonable fact determinations cannot be overturned by this court:

> [T]he reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, *even though the appellate court may feel that its own evaluations and inferences are as reasonable.* The reason for this well-settled principle of review is based not only upon the trial court's better capacity to evaluate live witnesses (as compared with the appellate court's access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts.
>
> . . . .
>
> . . . Recognizing that great deference should be accorded to the fact finder, the court of appeal and this Court have a constitutional duty to review facts. *Id.* To perform its constitutional duty properly, an appellate court must determine whether the trial court's conclusions were clearly wrong based on the evidence or clearly without evidentiary support. *Id.* That being said, we reiterate that when two permissible views of the evidence exist, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong.

*Bonin v. Ferrellgas, Inc.*, 03-3024, p. 7 (La. 7/2/04), 877 So.2d 89, 94 (citations omitted).

Lipsey also argues on appeal that the trial court erroneously found that three of those found to be qualified voters—Lee and Lucy Ford and Anthony B. Nettles—were not qualified because they all claimed homestead exemptions on domiciles in Mississippi. Louisiana's Election Code provides the qualifications for registering to vote in this state only and in doing so sets forth a limitation regarding homestead exemptions claimed in Louisiana only. Specifically, La.R.S. 18:101(B) states that a citizen claiming a homestead exemption *in Louisiana* pursuant to Article 7, § 20 of the Louisiana Constitution, must register and vote in the precinct in which

8

that residence is located. La.R.S. 18:101(B). Consequently, we find that the trial court's findings of residency status as to these voters, as referenced earlier, are otherwise reasonably supported by the record. Accordingly, we find no merit to this argument.

*Nursing Home Resident Voters*

Lipsey contends that it was error for the trial court to find that three nursing home residents,[6] Margaret Nessmith Arthur, Maidie L. Ezell Dawson, and Mary Etta Hill, were properly qualified to vote pursuant to the state Special Program for Handicapped Voters (La.R.S. §§ 18:1331-33). The program allows otherwise qualified voters who, because of a physical disability are unable to vote at the polls on election day or during early voting, to vote absentee by mail and for an extended time period prior to the election. *See* La.R.S. 18:1333(B).

Lipsey asserts on appeal that these three voters were not properly qualified to vote through this program because they were never approved for the program by the Parish Board of Election Supervisors as is required by La.R.S. 18:1332(B)(3).[7] Lipsey contends that they were unlawfully approved for the program

---

[6]In his appeal, Mr. Lipsey includes a fourth nursing home resident, Billy Ray Vinson, in his list of voters who were improperly allowed to vote via the state's Special Program for Handicapped Voters. However, the trial court noted that Billy Ray Vinson's qualifications were not timely challenged prior to the election and as a result, Mr. Lipsey had waived his right to challenge this voter at trial.

[7]Louisiana Revised Statutes 18:1332(B)(3) states:

§ 1332. Disabled voters; physical disability rendering voter incapable of voting in person, voting absentee by mail; requirements

. . . .

(3) The parish board of election supervisors may examine all or any part of the evidence and shall make the final determination in the matter. If the board approves the eligibility of the voter for participation, it shall direct the registrar to place the voter in the special program and notify him thereof. The parish board of election supervisors may direct the registrar to remove for cause a voter from participation in the program if the board determines after a hearing on

9

by the Registrar of Voters, Golda Ensminger (Registrar Ensminger), only. In addition, he claims that their votes are invalid because there were no executed acknowledgments provided by the persons who gave voting assistance to these persons as is required by La.R.S. 13:1333(G)(4)(c).[8]

The record indicates that Registrar Ensminger testified that the Board of Election Supervisors delegated the authority to approve voters for this program to her in March of 2007. However, due to complaints made by Board Member Justin Connor, Registrar Ensminger testified that she presented the files containing documentation necessary for the approval of the six participants in the program (including those persons at issue in this case) to the Board of Election Supervisors at a special meeting, held on April 4, 2007. Registrar Ensminger testified that the files were reviewed by the Board of Supervisors and that all members of the board indicated their approval of the six voters. The trial court found that Registrar Ensminger's testimony concerning the April 4, 2007, approval of these voters to the program by the board was credible and unrefuted at trial and was sufficient to meet

---

the matter that the voter has failed to vote on at least two occasions despite assistance. If removal is ordered as a result of such hearing, the voter shall be notified immediately by the parish board of election supervisors.

[8]Louisiana Revised Statutes 18:1333(G)(4)(c) states:

**§ 1333. Voting by persons confined to a nursing home**

. . . .

G. The voting by each voter shall be accomplished in the following manner:

. . . .

(c) Any person who assists the voter shall execute an acknowledgment, on a form which shall be prescribed and furnished to the registrar of voters by the secretary of state and made available by the registrar of voters through the deputy registrar who appears at the nursing home, verifying that he has marked the ballot in the manner dictated by the voter.

the requirements of the statute. The trial court also found that the claims asserted in the petition, that these ballots were not properly witnessed, cast, or processed, were abandoned at trial due to Lipsey's failure to put on any evidence to support these contentions.

The trial court's findings are supported by the record and are not manifestly erroneous. The record shows that the ministerial functions required of the Board of Election Supervisors were carried out prior to the October 20, 2007, election. In addition, we find that the unrefuted testimony presented by Registrar Ensminger, regarding the witnessing, casting, and processing of these votes, did not establish any irregularity or lack of compliance with statutory guidelines. Accordingly, we find no merit to Lipsey's contentions.

*Interdicted Voter*

Lipsey asserts that the trial court erroneously found that Kay Hawkes (Ms. Hawkes) was a qualified voter. Lipsey contends that the evidence reflects that she was the subject of a full interdiction and, therefore, was not qualified to vote pursuant to La.R.S. 18:102.[9]

---

[9]**§ 102. Ineligible persons**

A. No person shall be permitted to register or vote who is:

(1) Under an order of imprisonment, as defined in R.S. 18:2(8), for conviction of a felony; or

(2) Interdicted after being judicially declared to be mentally incompetent as a result of a full interdiction proceeding pursuant to Civil Code Article 389. A person subject to a limited interdiction pursuant to Civil Code Article 390 shall be permitted to register and vote unless the court in that proceeding specifically suspends the interdicted person's right to vote in the judgment of interdiction. If a person was previously subject to full interdiction, which has been changed to a limited interdiction, that person shall be eligible to register and vote unless the judgment of limited interdiction specifically suspends that right.

B. Notwithstanding the provisions of Paragraph (A)(1) of this Section or any other provision of law to the contrary, a person who

The trial court's Written Reasons for Judgment actually state that Lipsey waived his challenge to Mrs. Hawkes' qualifications to vote because he failed to file his challenge prior to or on the date of the election. *See* La.R.S. 18:1434. The trial court found that Ms. Hawkes had been a registered voter in the parish since 1974 and that she had been the subject of a judgment of interdiction since 1988. With due diligence, her qualifications to vote on this basis could have been challenged prior to the election.

Further, the trial court wrote that the record was unclear as to whether Ms. Hawkes had been the subject of a full or limited interdiction, which would have been determinative of whether the interdiction precluded her from voting. In addition, the trial court stated that the record was unclear as to whether the subject interdiction had any true legal effect, due to the lack of any evidence therein that an appointed curator was actually ever qualified to manage Ms. Hawkes' affairs. We agree and find no manifest error in the trial court's rulings.

### Voting Machine Irregularities and Alleged Election Offenses by Incumbent Sheriff

Lipsey contends that the trial court erred in finding that he failed to meet his burden of proof on the claims that the thirteen-vote discrepancy, totaled from six voting machines and polling lists and various alleged election offenses committed by the incumbent Sheriff, so impeded the election that the outcome was indeterminable. We disagree and find the rulings of the trial court on these issues to be reasonably supported by the record.

---

was convicted of a felony prior to the effective date of the 1974 Constitution of Louisiana who has fully satisfied and completed his sentence shall not be ineligible to register to vote, nor shall he be prohibited from voting, based upon that conviction.

A discrepancy in voting machine counts and poll lists, alone, does not constitute grounds to discount votes. *See Brunet v. Evangeline Parish Sch. Bd.*, 379 So.2d 271 (La.App. 3 Cir. 1979); *Fitzmorris v. Lambert*, 382 So.2d 169 (La.App. 1 Cir.), *writ refused*, 384 So.2d 793 (La.1979). Louisiana Revised Statutes 18:1432[10] now provides the grounds for nullifying an election:

> Considering this language, the Louisiana Supreme Court in *Adkins v. Huckabay*, 99-3605 (La. 2/25/2000), 755 So.2d 206, stated that a party contesting an election no longer must show that "but for" the irregularity he would have won the election.
>
> Although a party contesting an election is no longer limited to the "but for" standard, we note that a party contesting an election still must show at least that because of fraud or irregularities, the outcome of the election is impossible to determine. Thus, it is the effect of the irregularity on determining the outcome, rather than the fact of an irregularity by itself, that guides us in these matters.

---

[10]**§ 1432. Remedies**

A. If the trial judge in an action contesting an election determines that: (1) it is impossible to determine the result of election, or (2) the number of qualified voters who were denied the right to vote by the election officials was sufficient to change the result in the election, if they had been allowed to vote, or (3) the number of unqualified voters who were allowed to vote by the election officials was sufficient to change the result of the election if they had not been allowed to vote, or (4) a combination of the factors referred to in (2) and (3) in this Subsection would have been sufficient to change the result had they not occurred, the judge may render a final judgment declaring the election void and ordering a new primary or first and second party primary or second party primary or general election for all the candidates, or, if the judge determines that the appropriate remedy is the calling of a restricted election, the judge may render a final judgment ordering a restricted election, specifying the date of the election, the appropriate candidates for the election, the office or other position for which the election shall be held, and indicating which voters will be eligible to vote.

B. If the trial judge determines that an action contesting an election or objecting to candidacy was filed frivolously, he may award all costs of court, plus a reasonable attorney fee, plus damages, to the defendant.

*Nugent v. Phelps*, 36,366, p. 13 (La.App. 2 Cir. 4/23/02), 816 So.2d 349, 357, *writ denied*, 02-1153 (La. 5/10/02), 815 So.2d 850.

In this case, Lipsey failed to produce any evidence establishing that the irregularities made the outcome of the election impossible to determine. There was no proof presented that the discrepancies were the result of illegally cast votes or because voters were prevented from voting. Rather, the only evidence presented on this issue was the testimony offered by John Kitchen (Mr. Kitchen), a voting machine technician supervisor employed by the secretary of state. He essentially testified that human error, in the actual process of casting votes and/or in the maintaining of poll lists, would explain the differences in the votes. He also testified that he had no record of receiving calls concerning voting machine malfunctions from any of the six precincts at issue during the election. Lipsey offered no evidence to discount Mr. Kitchen's testimony. We cannot say that the trial court's reliance on this testimony was manifestly erroneous. Consequently, we find that Lipsey's contention that the trial court erred in refusing to annul the election on this basis is without merit.

Regarding the allegations of election offenses allegedly fostered by the incumbent Sheriff's office, we find that Lipsey failed to present sufficient proof of such activity that would have justified disqualifying any votes or nullifying the election as prayed for. Lipsey alleged that the "opposing candidate for Sheriff fostered an environment of voting irregularities and errors which makes it impossible to determine the outcome of the election. . . . [I]nclud[ing] a) Allowing uniformed Sheriff's Department personnel in and improperly close to polling stations; b) Allowing uniformed Sheriff Department personnel to watch voter's vote; and c) Encouraging individuals, including but not limited to the Sheriff's Department personnel and/or their relatives, to improperly register to vote and vote in Concordia

14

Parish." The trial court found that no evidence was offered at trial to support the allegations and that no argument was made by counsel for Mr. Lipsey in this regard. After a review of the record, we agree and find no manifest error in the trial court's ruling that Lipsey failed to carry his burden of proof as required by La.R.S. 18:1432(A) in order to nullify the election.

IV.

**CONCLUSION**

The judgment of the trial court is affirmed. Costs of this appeal are assessed to plaintiff-appellant, Glenn Lipsey.

**AFFIRMED.**