JiPER CURIAM.
Carl F. Janzen, the plaintiff in this election suit, appeals a lower court judgment finding that he failed to meet his burden of proving the occurrence of irregularities sufficient to change the result of the election. For the reasons expressed, we reverse, declare the election void and order a new general election.
Carl F. Janzen and Joe Stickell were contestants in the September 21, 1996, election for the office of mayor, Town of Benton. The final vote tally was 324 votes for Stickell and 323 votes for Janzen. Janzen filed this election contest suit on September 30, 1996, asserting that an eligible voter was prevented from voting in the election because of the voter’s alleged non-residence in the Town of Benton. The hearing on the contest was set for October 4, 1996. Prior to the hearing, Janzen learned that a voter cast a ballot for the incumbent mayor, Stickell, despite the voter not being a resident of the Town of Benton. Janzen amended and supplemented his petition on the day prior to the hearing to complain of this irregularity. Defendant Stickell’s objection to the filing of the amended pleadings was sustained by the trial court. The court held that the amended pleadings came too late under the provisions of La. R.S. 18:1405(B) requiring an action contesting an election to be instituted on or before the ninth day after the election. Janzen then proffered the evidence that would have been introduced in support of the amended pleadings. The trial court, although commenting that it thought a claim of no right of action was moot as a result of the court’s disallowing the filing of the amended pleadings, allowed Stickell to file an exception of no right *685 of action and preserve evidence during the proffer.
During the proffer, Stickell’s counsel asked these questions of the proffered witness, Mr. Anderson:
Q: Mr. Anderson, when you voted you voted at the town of Benton, is this Izcorrect?
A: Yes, sir.
Q: Did anyone challenge your vote at that time?
A: No, sir.
The trial court then took evidence on the original pleadings, which urged that a qualified voter was excluded from voting. Mrs. Nettie M. Johnson, an 82-year-old voter who was stipulated to be a qualified voter in the Town of Benton, testified that in 1990 she had moved to the Town of Benton and had previously voted in town elections. Due to an erroneous change in her precinct, Mrs. Johnson was unable to vote in the mayor’s race; she testified that, had she been allowed, she would have voted for Janzen. Mrs. Johnson testified that she complained of her inability to vote for the Benton mayor to the voting commissioners present at the precinct, and that on the Monday subsequent to the election, she complained to the Registrar of Voters as she had been instructed to do on election day at her new precinct. Her latter complaint was corroborated by testimony of a worker in the Registrar’s office.

THE TRIAL COURT’S RULING

The trial court ruled against Mr. Janzen and in favor of Mr. Stiekell. As previously noted, the court found Janzen’s amended petition untimely. With regard to Mrs. Johnson, the court concluded that under the provisions of La. R.S. 18:1434, she did not exercise due diligence in objecting to the change in her voting precinct that resulted in her inability to vote in the mayor’s election. The court not only concluded that she could have complained to the Registrar of Voters when she received her new voter registration card before the election, but also concluded that her objection at the polling place was inadequate. According to the trial court, her |3objection at the polling place was to the precinct change, and not specifically to being unable to vote in the mayor’s race. The court observed that two of the election commissioners present at the polling place where Mrs. Johnson voted that election day did not remember Mrs. Johnson making a complaint.

MRS. JOHNSONS VOTE

The provisions of La. R.S. 18:1434 state:
An objection to the qualifications of a voter or to an irregularity in the conduct of the election which, with the exercise of due diligence, could have been raised by challenge of the voter or objections at the polls to the procedure is deemed waived.
Under the above-quoted provisions, we conclude that the trial court erred in finding a waiver as to the irregularity concerning the vote of Mrs. Johnson. We read the statutory provisions as requiring the exercise of due diligence by the candidate or his representative; we do not read the statute to waive or relinquish objections when a voter, unknown to the candidate, does not make an adequate complaint about his or her voting precinct. Second, even if the statutory waiver provisions could be triggered by the inadequacy of a voter’s complaint, we find the record contains sufficient proof that Mrs. Johnson adequately complained of being denied the right to vote in the mayor’s election, and that the trial court’s conclusion to the contrary is manifestly erroneous.
Absent powers of omniscience, Jan-zen could not have examined the voting rolls and determined what voters should have been listed, but were absent from the voting rolls. Moreover, even if Janzen was aware that Mrs. Johnson’s residence was inside the town limits, the fact that Mrs. Johnson was absent from the voting rolls of the Town of Benton would not place him on notice of an irregularity. Mrs. Johnson, like any other voter, could have been interdicted, could have committed a felony (La. R.S. 18:101), could have died (La. R.S. 18:173), or simply could have elected not to register to vote. The absence of a voter on the voter registration rolls Udoes not charge the candidate with knowledge of an irregularity.
*686 Assuming arguendo in applying the waiver provisions that voter action is necessary to preserve a candidate’s rights, we are satisfied that the voter in this case, Mrs. Johnson, made an adequate complaint of her inability to vote. Mrs. Johnson presented herself at the voting precinct to which she was assigned on the day of the election. She testified that she complained at the newly assigned voting precinct about her inability to vote at her old precinct. Furthermore, when specifically asked whether she “fussed” about not being able to vote for the mayor in the town election, she replied: “Well, not only that all the whole town.” She also testified she was told to go to the Registrar’s Office on Monday (not on election day) and make a complaint.
The Registrar of Voters, William Tom Johnston, identified Melba Miller as the Commissioner in Charge and Bridget Hughes, Martha Bale, Carol Lane and Harriet Oursler as commissioners. Only two of these commissioners testified (Melba Miller and Bridget Hughes). Ms. Miller indicated that Mrs. Johnson did not make any complaint to her on the day of the election; neither testified Mrs. Johnson did not make a complaint. Furthermore, Hughes testified that complaints were made on the day of the election about the mayor’s office not being on the ballot, but she could not specifically identify anyone who complained.
While Mrs. Johnson’s testimony appears to have been made less clear by her admitted hearing problem, she testified clearly enough that she complained at the voting precinct about her inability to vote at the town precinct and in the town election. Furthermore, Bridget Hughes’ testimony is arguably corroborative of Mrs. Johnson’s, as was the testimony concerning Mrs. Johnson’s visit to the Registrar’s Office on the Monday following the election.
For the reasons set forth above, we conclude that the trial court was clearly |5wrong in its characterization of and conclusions concerning Mrs. Johnson’s testimony. In so concluding, we are well aware of the great discretion of the trial court regarding the credibility of witnesses, and of the trier of fact’s superior position to observe variations in demeanor and tone of voice that so greatly affect the listener’s understanding and belief in what is said. We also are cognizant of the fact that the trial court necessarily depended on the court’s notes taken during the hearing — a process that was made more difficult by Mrs. Johnson’s hearing problems. Nevertheless, after carefully reviewing the transcript of her testimony, we find that, contrary to the trial court’s findings, she did specifically object to not being allowed to vote in the mayor’s race. We do not find her testimony to be either contradictory, or to be contradicted by the two election commissioners who testified.
Considering the one vote margin of the election, Mrs. Johnson’s testimony made a prima facie case for plaintiff: Mrs. Johnson should have been allowed to vote for mayor but was not; her vote would have affected the outcome of the election. While the burden of proof in this case always rested with Mr. Janzen, Mrs. Johnson’s unrebutted testimony shifted the burden of going forward to Mr. Stickell. In the absence of any rebuttal testimony from three commissioners who could have received Mrs. Johnson’s complaint, we conclude that even if an adequate complaint by Mrs. Johnson was necessary to avoid the statutory waiver provisions, her testimony was adequate in this regard, the plaintiff carried his burden of proof, and the trial court erred in failing to void the September 21, 1996 election for mayor of the Town of Benton.

UTHE AMENDED PETITION

In light of our holding regarding Mrs. Johnson’s vote, we need not address the issues concerning the amended petition.

A NEW ELECTION

La. R.S. 18:1432 provides in pertinent part: A. If the trial judge in an action contesting an election determines that: 1) it is impossible to determine the result of election or 2) the number of qualified voters who were denied the right to vote by the election officials was sufficient to change the result in the election, if they had been allowed to vote, or 3) the number of unqualified voters who were allowed to vote *687 by the election officials was sufficient to change the result of the election if they had been allowed to vote, or 4) a combination of the factors referred in 2) and 3) herein would have been sufficient to change the result had they not occurred, the judge may render a final judgment declaring the election void and ordering a new primary or general election for all the candidates, or, if the judge determines that the appropriate remedy is the calling of a restricted election, the judge may render a final judgment ordering a new election and specifying the date of the election, the appropriate candidates for the election, and the office or other position for which the election shall be held.
From the evidence adduced, which indicates that there may be voters situated similarly to Mrs. Johnson (persons living on Reyenga Road improperly classified as nonresidents of the Town of Benton), we conclude that declaring the election void and ordering a new general election is an appropriate remedy.
The ruling of the trial court is reversed and vacated, the election of September 21, 1996 for the office of Mayor, Town of Benton, is hereby declared void, and a new general election is hereby ordered. Costs are assessed to Mr. Stickell.
REVERSED. NEW GENERAL ELECTION ORDERED.
GASKINS, J., dissents with written reasons.