JiDOUCET, Chief Judge.
This election contest suit was instituted by plaintiff-appellee, Daniel Arvie, to challenge the results of the November 3, 1998, run-off election for the School Board. Defendant-appellant, Leon Skinner, garnered the majority of the votes cast in the election. After finding illegal electioneering and other irregularities in the conducting of the election, the trial court set aside and vacated the election results and ordered a new election to be held on December 5, 1998. For the reasons assigned below, we reverse.
In the election, the voting machines calculated that 719 votes were cast, and the absentee ballots totaled 364 votes. Of these total votes, Arvie received only 531 votes to Skinner’s 552 votes, thereby resulting in Skinner’s 21 vote victory in the election. However, the election involved three precincts. Of these, Skinner only won in parish ward 1, precinct 7, carrying it by a seventy percent margin, according to plaintiff.
Arvie’s original petition averred that Skinner and/or his campaign workers and/or polling commissioners had violated the election laws by conducting illegal ^electioneering in and around the polling place, both in person and through use of the telephone. Moreover, the petition alleged that these persons had improperly failed to permit the polling commissioners who had served in the primary election to serve again in the run-off and in the appointment of alternate commissioners and poll watchers.
The original petition was amended to add more specificity as to the nature of the infractions at issue. These additional accusations included allegations that the alternate commissioners who were chosen were related by blood or affinity to Skinner, that the commissioners engaged prospective voters in debates and otherwise harassed voters, and that a phone bank was conducted at the polling place. Arvie asserted that persons without presenting proper identification and without properly completing affidavits were nevertheless permitted to cast votes in the election. Arvie alleged that the absentee ballots were tabulated before the close of the election and that this information was used to determine the results needed at the polling places. Finally, Arvie contended that voters who lived outside the district were improperly registered to vote.
In response to the suit, Skinner filed exceptions of no cause of action and no right of action. At the trial of this matter on November 16, 1998, the Commissioner of Elections joined with Skinner in arguing the exceptions. However, the trial court denied the exceptions and proceeded to hear the case on the merits.
*92 The trial court rendered reasons for judgment after hearing the merits. The court found that Skinner’s wife, Wanda Skinner, had acted improperly in supporting her husband’s campaign. He ruled that she had illegally snatched an absentee ballot from one lady and cast the vote after marking the ballot. Moreover, on the day of the election, Wanda was adjudged to have engaged in illegal electioneering within six hundred feet of the poll in violation of La.R.S. 18:1462(A). Furthermore, the judge ruled that she and others went into the voting booths with other voters to assist them in casting their votes without the voters being entitled to such assistance. The trial court found that Wanda had obtained lists of voters who had not yet cast their votes.
In addition, the trial court stated that the commissioners at precinct 7 had participated in the illegal electioneering and otherwise breached the laws regarding their duties as commissioners. The trial judge found that the commissioners failed to fill out the affidavits properly for voters who appeared at the poll without the proper identification. No evidence was adduced to implicate the candidate Skinner directly has being involved in any of these activities.
Regardless, as a consequence of the above discussed findings of fraud and illegal activities, the trial court ruled that the results of the election were utterly impossible to determine. Therefore, instead of declaring either candidate the victor, the trial court invalidated the election result and ordered a new election for December 5,1998.
A timely appeal was filed by Skinner. The Secretary of State and the Commissioner of Elections have also filed briefs in this court. Arvie filed a brief in opposition to the appeal, but also filed an answer to the appeal praying to be declared the winner in the November 3 election.
We shall assume arguendo that the factual determinations made by the trial judge in this case are correct, and we shall decide this case on the facts as determined by the trial court. The issue to be decided by this court, then, is whether the trial court’s decision to call for a new election is mandated by these facts as applied to the statutes governing elections in this state as interpreted by our jurisprudence.
The determination of an election contest is controlled by La.R.S. 18:1431, which provides:
When the court finds that one or more of the votes east in a contested election are illegal or fraudulent, the judge-shall subtract such vote or votes from the total votes cast for the candidate who received them if the contest involves the election to office, or from the total vote for or against a proposition, if the contest is of an election upon a proposition. If the court determines that legal votes cast in the election were excluded in the total votes cast on a candidate or proposition, then these excluded legal votes shall be added to the total votes on the candidate or the proposition to which they are attributable. Thereafter, and after considering all the evidence, the court shall determine the result of the election.
Once the court determines that fraud and illegal voting has occurred, the court must turn to La.R.S. 18:1432, which provides in pertinent part:
A. If the trial judge in an action contesting an election determines that: (1) it is impossible to determine the result of election, or (2) the number of qualified voters who were denied the right to vote by the election officials was sufficient to change the result in the election, if they had been allowed to vote, or (3) the number of unqualified voters who were allowed to vote by the election officials was sufficient to change the result of the election if they had not been allowed to vote, or (4) a' combination of the factors referred to in (2) and (3) herein would have been sufficient to change the result had they not occurred, the judge may render a final judgment declaring the election void and ordering a new primary or general election for all the candidates or if the judge ^determines that the appropriate remedy is the calling of a restricted election, the judge may render a final judgment ordering a restricted election, specifying the date of the election, the appropriate candi *93 dates for the election, the office or other position for which the election shall be held, and indicating which voters will be eligible to vote.
The implications of the above rules can be found in Colvin v. Franklin Parish School Board, 28,718 (La.App. 2 Cir. 2/22/96); 668 So.2d 1310. In that case the plaintiff amply demonstrated that a large number of ineligible voters had been allowed to vote on a particular proposition. Regardless, that court ruled as follows:
Contrary to plaintiffs assertion that the election should be declared null and void simply because a large number of ineligible voters were allowed to participate, the Election Code provides: when one or more illegal or fraudulent votes are cast in a contested election, such votes should be subtracted from the total votes cast for or against a proposition. Then, after considering all the evidence, the court should determine the result of the election. La. R.S. 18:1431. The Election Code states that an election should be declared void only: (1) if it is impossible to determine the result of an election or (2) the number of unqualified voters who were allowed to vote was sufficient to change the result of the election if they had not been allowed to vote. La.R.S. 18:1432.
In an election contest which seeks to have the results of an election declared null and void, the plaintiff bears the burden of proof. The plaintiffs burden is two-fold. The plaintiff must first prove either fraud or irregularities are present. Then the plaintiff must prove that, but for the fraud or irregularities, the outcome of the election would have been different. Huckaby v. Hunter, 427 So.2d 1 (La.App. 2d Cir.1983), writ denied, 427 So.2d 1197 (La.1983). In Moreau v. Tonry, 339 So.2d 3 (La.1976), the Louisiana Supreme .Court rejected the argument advanced by the plaintiff that if the number of irregularities exceed the difference between the candidates, the outcome of the election cannot be determined. The Moreau court held that an election may only be upset if the one contesting the election can show that, but for irregularities or fraud, the election result would have been different.
Colvin, 668 So.2d at 1311.
In the election sub judice, the plaintiff adduced evidence of numerous fraudulent activities and irregularities in the conduct of the election. The trial court found that the voter rolls were allowed to be scanned by Skinner’s supporters in order to determine who remained to vote in the community in order to focus the electioneering efforts. The court ruled that persons not entitled to assistance in voting pursuant to La.R.S. 18:564 were assisted. The commissioners selected to work at precinct 7 were improperly chosen by the Wanda’s sister who was the commissioner {¡in charge, and two of the replacement commissioners were related to Wanda Skinner. Moreover, during the election, voters who did not present the required identification were allowed to vote by signing an affidavit; however, these affidavits were not filled out properly by the commissioners. Electioneering activities were allowed to be conducted within 600 feet of the polling area.
In spite of the above findings by the trial court, though, only one vote was found to have been clearly illegally influenced, that of the absentee ballot that was taken from the hands of the appropriate citizen and instead marked and cast by Wanda. Plaintiff proved that the commissioners were improperly selected and that voters without appropriate identification were allowed to vote without the affidavits verifying their identity being properly completed. Moreover, the trial court determined that electioneering occurred too close to the polling area.
However, no evidence was adduced to show that by having the commissioners improperly selected, the outcome of the election was altered. Furthermore, at the trial of this matter, the parties stipulated that the forty-eight people who had voted without identification were each entitled to vote in that election and that they were in fact the persons identified on the respective affidavits, regardless of the affidavits’ apparent invalidity. Finally, in spite of the electioneering in propinquity to the polling area, no evidence was adduced to show that this affected the outcome of the election. Thus, no *94 difference in the outcome of the election was shown from any of the foregoing violations.
During the trial, Wanda admitted that she had assisted more than one person that she claimed was entitled to assistance pursuant to La.R.S. 18:564, but could only admit to assisting one of the persons in precinct 7 that was actually entitled to such help. However, Wanda also attested that she had conducted activities at more than one precinct on election day, including assisting voters in the voting booths. Plaintiff did not adduce any proof as to the number of individuals that Wanda had appropriately or inappropriately assisted at these other precincts. Thus, while the trial court correctly ruled that Wanda had assisted voters not entitled to vote and that the total number of those assisted that day could have exceeded twenty, no set number was provided to the court as to the number improperly assisted at any precinct, much less the exact number at precinct 7. Accordingly, plaintiff failed to carry his burden of proving that the election result would have been different but for these ^irregularities.
The above situation stands in stark contrast to the scenario presented to this court in Fanara v. Candella, 94-491 (La.App. 3 Cir. 4/18/94); 640 So.2d 406, writ denied, 94-991 (La.4/21/94); 641 So.2d 203. In an election determined by a two vote margin of victory, the plaintiff therein had proven that not only two other votes were inappropriately counted, but also that seventeen voters were illegally given assistance in voting despite objections having been raised at the time of the occurrences on election day. Thus, the Fanara decision offers no help to plaintiff in the instant case.
We would point out that by no means does this court condone the activities detailed in the trial court’s reasons for ruling. To the contrary, we note that such activities can form the basis for civil and criminal liability. Davis v. McGlothin, 524 So.2d 1320 (La.App. 3 Cir.1988); writ denied, 525 So.2d 1046 (La. 1988). However, we do not find that the irregularities in this case are of so pervasive a nature as to warrant the nullifying of the election. More precisely, plaintiff has failed to carry the burden of showing that but for these activities, the outcome of the election would have been different. Having reached this conclusion, Arvie’s answer to the appeal must, likewise, be denied. Accordingly, we hereby reverse the trial court and reinstate the election result declaring Leon Skinner the victor in the November 3 election. Costs of this appeal are to be divided equally between the plaintiff and defendant.
REVERSED AND RENDERED.