Judgment rendered December 12, 2023.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,730-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

JOHN NICKELSON                                     Plaintiff-Appellee

versus

HENRY WHITEHORN AND                        Defendants-Appellants
R. KYLE ARDOIN, IN HIS
OFFICIAL CAPACITY AS
LOUISIANA SECRETARY OF
STATE

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 647,419

Honorable E. Joseph Bleich *(Ad Hoc)*, Judge

* * * * *

LAW OFFICES OF GRAY SEXTON          Counsel for Appellant
By: R. Gray Sexton
    Laura Blair Naquin Green

CARL HENRY FRANKLIN

COOK, YANCY, KING, & GALLOWAY          Counsel for Appellee,
By: Brian Allen Homza                              John C. Nickelson
    David Jonathan Hemken

STERNBERG, NACCARI & WHITE, LLC
By: Scott L. Sternberg

CHARLTON JOSEPH MEGINLEY                    Counsel for Appellee,
State of Louisiana, Secretary of State           R. Kyle Ardoin,
                                                  Secretary of State

* * * * *

Before STONE, COX, ROBINSON, HUNTER, and MARCOTTE, JJ.


COX, J., concurs with written reasons.

STONE, J., dissents with written reasons.

HUNTER, J., dissents with written reasons.

**ROBINSON, J.**

This appeal concerns an election contest arising from the runoff election for the office of Caddo Parish Sheriff. Henry Whitehorn appeals the judgment of the trial court ordering a new election for the office of Caddo Parish Sheriff. For the following reasons, we affirm the judgment of the trial court.

## FACTS

On November 18, 2023, a runoff election for the office of Sheriff of Caddo Parish was held between candidates John Nickelson ("Nickelson") and Henry Whitehorn ("Whitehorn"). A margin of one vote decided the election in favor of Whitehorn. Unofficial counts showed that of the total 43,241 votes, Whitehorn received 21,621 votes while Nickelson received 21,620. On November 27, 2023, a recount by the Caddo Parish Board of Election Supervisors ("Board") occurred. Of the 7,781 absentee-by-mail ballots, the number of accepted mail ballots increased by six (three for each candidate), but the one-vote margin remained the same.

On November 7, 2023, Nickelson instituted the present election contest under La. R.S. 18:1401(B), naming as defendants Whitehorn and R. Kyle Ardoin in his official capacity as the Louisiana Secretary of State.[1] Nickelson alleged that irregularities existed in the in-person and absentee-by-mail ballots.[2] Nickelson asserted that these irregularities are significant, which given the one-vote margin, directly affected the outcome of the

---

[1] Pursuant to La. R.S. 18:1402, as a statutorily mandated party, the Louisiana Secretary of State was properly named as a defendant in this matter.

[2] La. R.S. 18:1406 states in relevant part that the petition shall allege that except for substantial irregularities or error, fraud, or other unlawful activities in the conduct of the election, the petitioner would have been elected. Nickelson's petition satisfies this requirement.

election.  Specifically, regarding in-person voting, Nickelson alleged two instances of double voting and that four ineligible fully interdicted individuals voted in the election.[3]  Nickelson also requested judicial review of 51 duplicate absentee-by-mail ballots with distinguishing marks or other features susceptible of identification on grounds that they were not properly adjudicated.  Nickelson argued that the complained-of conduct is consequential and could have affected the outcome of the election.  He prayed in part for the declaration of a winner by the trial court or that a new election be called.

Whitehorn filed an opposition to Nickelson's petition, arguing that he indisputably won the election for Sheriff because no timely challenges to the ballots had been raised and thus the recount ultimately confirmed his victory.

***Procedural History***

The trial commenced on November 30, 2023, and the matter was submitted on briefs on December 4, 2023.[4]  Five witnesses testified (three for Nickelson and two for Whitehorn), and through their testimony, 12 exhibits were introduced into evidence.

Sherri Hadskey, the Commissioner of Elections in the Louisiana Secretary of State's Office, confirmed that two individuals voted twice, one in early voting and one by mail-in ballot, but both on the day of the election. Hadskey stated that there was no way to know whom these individuals voted

---

[3] In his petition, Nickelson raised numerous other claims which were abandoned at trial.

[4] On November 29, 2023, Whitehorn filed exceptions of no cause of action, no right of action, prescription, *res judicata,* and peremption which were denied by the trial court in the judgment at issue; this portion of the ruling has not been appealed.

for.  Plaintiff's Exhibit A, introduced into evidence, documented the allegations that two individuals voted twice.  Whitehorn's Exhibit A, also introduced into evidence, showed that one of these voters voted in person because "it was not showing in the register that his absentee ballot was received."  The exhibit showed that a commissioner spoke with an individual at the registrar of voter's office who informed the commissioner that "she will pull his absentee mail in ballot."[5]  Hadskey could not confirm whether this in fact occurred and was not aware of any timely complaint regarding the mail-in ballots.  She did not know how anyone voted.[6]

Caddo Parish Clerk of Court Mike Spence confirmed that four fully interdicted individuals voted in the election.  He stated that it would take very little time to "pull these four records together."  He also testified that the records of interdiction would have been available long before the election.  Spence confirmed that neither candidate sought the records of interdiction prior to the date they were certified by Spence on November 28, 2023, and received by Nickelson.  Plaintiff's Exhibits C-F and H documented Spence's testimony.[7]

The Caddo Parish Registrar of Voters, Dale Sibley, testified regarding the absentee-by-mail ballot allegations.  Sibley went through multiple "redacted" ballots and confirmed that "some," "five to seven" of the

---

[5] No further testimony or evidence was presented at trial to demonstrate that this actually occurred.

[6] Hadskey testified that two parishes had elections that resulted in a tie and the new election was set for December 16, 2023.  At this late date, she confirmed that the next possible election date would be March 23, 2024.

[7] These exhibits establish that these individuals were fully interdicted in 2021, 2014, 2013 and 2012.  Exhibit H shows that one of these individuals voted by mail and the other three voted in person.  Spence also identified Plaintiff's Exhibit 3, the Notice of Irregularities from Precincts 1-166.

3

accepted ballots had no witness signature and "just slipped through the cracks." He noted that such ballots are normally rejected. Sibley testified that fully interdicted individuals should be purged from the voter list. Sibley had "never seen a single interdiction," and stated that the "only way we would know is if we are notified that there has been an interdiction." He testified that he did not believe that the mail-in ballots could be reviewed prior to the election (before the board counting), but noted that he "could be corrected."

Brenda Traylor, the governor's appointee to the Board, oversaw the opening of the absentee ballots. She confirmed that she received no written challenges to the absentee or mail-in ballots.

R.J. Johnson, a four-year member of the Board, testified that Nickelson chose not to avail himself of the opportunity to be present at the verification, preparation, and counting process for absentee-by-mail and early voting ballots. Johnson confirmed that the time and date of that process was posted and that there would be a record of any challenge made by a candidate or his representative because the challenger would fill out a form stating the challenge.

At the conclusion of the one-day trial, the trial court requested post-trial briefs and took the matter under advisement. In his post-trial brief, Nickelson argued that the testimony and evidence clearly established double voting by two individuals, voting by four fully interdicted individuals, and multiple irregularities in mail-in ballots sufficient to require a new election

4

for Caddo Parish Sheriff.[8]  Notably, Nickelson challenged Whitehorn's argument that he waived any objection to the ballots or votes on grounds that the law does not require objections to matters that could not have been reasonably objected to through the exercise of due diligence.

In his post-trial brief, Whitehorn argued that Nickelson's failure to challenge mail-in ballots or voter qualifications either before the election or on election day, as required by La. R.S. 18:1434 and 18:1315, waived his right to do so under La. R.S. 18:1434.  Whitehorn contended that had the objections been made, the issues could have been resolved before the election, rather than in a subsequent judicial challenge.  Whitehorn also asserted that Nickelson failed to establish that any of the voters voted in the sheriff's race, pointing out that 120 of the adjudicated ballots omitted a vote for either candidate for sheriff, and therefore had not presented evidence "sufficient to change the result of the election."

On December 5, 2023, the trial court issued a written opinion and judgment voiding the November 18, 2023, election for the office of Caddo Parish Sheriff and ordering a new runoff election between Nickelson and Whitehorn.  As it relates to the merits of this matter, the trial court accepted the testimony of Hadskey, Spence, and Sibley to find that two individuals had double voted, four ineligible fully interdicted persons cast ballots in the election, and that at least five accepted mail-in ballots should have been excluded from the election count.  Regarding the double votes, the trial court specifically found that, even with due diligence, Nickelson would not have

---

[8] Despite Whitehorn's contrary argument in brief, the trial court made no determination related to purported dead voters.

known to challenge the mail-in or early voting ballots before the election because the double voting did not occur until election day. Likewise, the trial court determined that Nickelson would not have known that the ineligible interdicted individuals were going to vote, "precluding them from knowing the interdiction records would need to be obtained." Finally, relying on the testimony of Sibley that Nickelson could not have reviewed the mail-in ballots, the trial court found that Nickelson had not waived any challenge to these ballots and invalidated five of those improperly counted votes which the trial court had reviewed.

Specifically, the trial court ruled:

[A]s to the alleged failure of the plaintiffs to attack those votes before they were cast, Plaintiff could not have known, days before the election, who would attempt to vote on election day. Plaintiff could not have known, days before the election, that persons would be improperly attempting to vote. In that there could have been no evidence reviewed, nor made available, before the eleven so-called subject "votes" were cast, to require such review and objection prior to the date of voting is totally illogical. That so-called eleven "votes" referenced herein which are at issue, and which were counted, were actually never votes at all. These were void *ab initio*.

. . . .

It defies logic in this particular case to conclude that it is possible to determine the accurate results of the runoff election, especially considering the one-vote margin. Just one illegal vote could have affected the outcome, and here, multiple illegal votes were cast and counted. This court finds that at least eleven votes should not have been counted in this one-margin election. Specifically, there were two individuals who voted twice; there were at least five votes cast by absentee/mail-in ballots which should not have been counted for failure to comply with the law; there were four invalid votes cast by interdicted persons who were unqualified voters. Because of the constitutional guarantee of secrecy of these ballots, it is impossible to determine the result of this election. La. R.S. §18:1432; La. Const. art. XI § 2.

Whitehorn appeals.

**DISCUSSION**

In brief, Whitehorn argues that the action of the trial court "is in patent disregard of the statutes controlling election-result challenges." Whitehorn asserts that Nickelson failed to introduce compelling evidence sufficient to "change the result of the election" as required by La. R.S. 18:1432(A)(1) or evidence that at least one of the challenged voters voted in the contest for Caddo Parish Sheriff. It is Whitehorn's contention that the secrecy protecting legal votes should not apply to illegal voters and that he should be entitled to an adverse presumption that the witnesses Nickelson failed to call would have testified unfavorably to him. Whitehorn also contends that under La. R.S. 18:1434, Nickelson waived his right to challenge absentee-by-mail and early-voting ballots as well as the interdicted and double voters because he failed to challenge them before the election, during the absentee counting process or at the polls.

In his brief, Nickelson argues that because of the constitutional secrecy of a voter's ballot, just one illegal vote could have affected the outcome of this election. Nickelson also contends that he satisfied his burden to show that, under La R.S. 18:1432, it is impossible to determine the outcome of this election and that the factual findings of the trial court are well-reasoned and should not be disturbed.

*Law*

The right of qualified citizens of Louisiana to vote and to have their votes counted, inherent in our republican form of government and the democratic process, is a fundamental and constitutionally protected right. As such, the Louisiana Constitution provides that "[e]very citizen of the

7

state, upon reaching eighteen years of age, shall have the right to register and vote." La. Const. art. I, § 10(A). To fulfill this right, the Constitution instructs the Legislature to "adopt an election code which shall provide for permanent registration of voters and for the conduct of all elections" and to "provide a method for absentee voting." The constitutional grant of the right to vote evidences an intent that the Legislature has broad powers to legislate the conduct, the when, where, and how, of the election process. *Adkins v. Huckabay*, 99-3605 (La. 2/25/00), 755 So. 2d 206. There is a constitutional guarantee of secrecy of ballots. La. Const. art. XI, §§ 1, 2.

It may be presumed that election commissioners will legally discharge their official duties. *State ex rel. Dugas v. Lehmann*, 220 La. 864, 57 So. 2d 750 (1952). Thus, election returns and certificates of election are presumptive proof of the result of an election which will prevail unless rebutted by proper evidence. *Id.* Accordingly, every reasonable presumption will be indulged in favor of the validity of an election. *Id.* Moreover, the general rule is that where the electors have had a fair and free opportunity to express their will at the polls, and have done so, the result of their choice will not be set aside because of the failure of a ministerial officer to perform some duty imposed upon him by law. *Meyer v. Keller*, 376 So. 2d 636 (La. App. 3 Cir. 1979).

In an election contest that seeks to have the results of an election declared null and void, the plaintiff bears the burden of proof. *Davis v. Malveaux*, 06-2096 (La. App. 1 Cir. 10/24/06), 945 So. 2d 70, citing *Savage v. Edwards,* 98-1762 (La. App. 3 Cir. 11/23/98), 728 So. 2d 428, *aff'd,* 98-

8

2929 (La. 12/18/98), 722 So. 2d 1004.[9]  The standard of review of the trial

court's ruling in such a case is abuse of discretion.  *Lipsey v. Dardenne*, 07-

1487 (La. App. 3 Cir. 11/29/07), 970 So. 2d 1237, *writ denied*, 07-2305 (La.

12/14/07), 970 So. 2d 539.  The trial court is in a better position to determine

the credibility of witnesses and should not be overturned in the absence of

clear wrongness.  *Cloud v. Schedler*, 14-1261 (La. App. 3 Cir. 12/3/14), 161

So. 3d 831.

A party contesting an election must show at least that because of fraud

or irregularities, the outcome of the election is impossible to determine.

*Atkins v. Huckabay, supra; Nugent v. Phelps*, 36,366 (La. App. 2 Cir.

4/23/02), 816 So. 2d 349, *writ denied*, 02-1153 (La. 5/10/02), 815 So. 2d

850.  Thus, it is the effect of the irregularity on determining the outcome,

rather than the fact of an irregularity by itself, that guides us in these matters.

*Nugent v. Phelps*, *supra*.  The court must analyze the irregularities with

statutory requirements so as not to unjustly disenfranchise an elector, to the

extent that such tolerance of irregularities will not lead to a manipulation of

an election, affect the integrity of an election or the sanctity of the ballot.

*Atkins v. Huckabay, supra*.

To this end, the Louisiana Election Code provides for court

determination of election contests.  La. R.S. 18:1432(A) sets forth the

remedies for an election contest as follows:

> If the trial judge in an action contesting an election determines that: it
> is impossible to determine the result of election, or the number of
> qualified voters who were denied the right to vote by the election
> officials was sufficient to change the result in the election, if they had
> been allowed to vote, or the number of unqualified voters who were

---

[9] *Savage v. Edwards*, *supra*, was subsequently reversed in part only relating to its
holding on the issue of vote buying.

allowed to vote by the election officials was sufficient to change the result of the election if they had not been allowed to vote, or a combination of these factors would have been sufficient to change the result had they not occurred, the judge may render a final judgment declaring the election void and ordering a new primary or general election for all the candidates, or, if the judge determines that the appropriate remedy is the calling of a restricted election, the judge may render a final judgment ordering a restricted election, specifying the date of the election, the appropriate candidates for the election, the office or other position for which the election shall be held, and indicating which voters will be eligible to vote.

### *Absentee-By-Mail and Early Voting*

A person who has voted either by absentee-by-mail ballot or during early voting shall not vote in person on election day. La. R.S. 18:1305.

La. R.S. 18:1313 provides the process for tabulation and counting of absentee-by-mail and early-voting ballots on election day.[10] The parish board of election supervisors shall be responsible for the preparation, verification, counting, and tabulation of all absentee-by-mail ballots in a given parish. La. R.S. 18:1313(B). This process generally occurs on election day and candidates, their representatives, and qualified electors may be present during the preparation, verification, counting, and tabulation of absentee-by-mail and early-voting ballots. La. R.S. 18:1313(E).

La. R.S. 18:1313(G)(3) provides:

(3) The board shall determine the validity of challenges filed in accordance with R.S. 18:1315.

La. R.S. 18:1315 states in relevant part:

A. (1) A candidate or his representative, a member of the board, or a qualified elector may challenge an absentee by mail or early voting ballot for the grounds specified in R.S. 18:565(A), by personally filing his written challenge with the registrar no later than the fourth day

---

[10] See also La. R.S. 18:1313.1, which provides similar procedures for preparation, verification, tabulation, and counting of absentee-by-mail and early-voting ballots before the election. It is not clear which process was utilized here.

before the election for which the ballot is challenged. Such challenge shall be on a form provided by the secretary of state.

. . . .

B. During the preparation and verification process for the counting of absentee by mail and early voting ballots before the election, as applicable, or the counting of absentee by mail and early voting ballots on election day, any candidate or his representative, member of the board, or qualified elector may challenge an absentee by mail or early voting ballot for cause, other than those grounds specified in R.S. 18:565(A).

***General Objection to Voter Qualifications/Conduct of Election***

An objection to the qualifications of a voter, except for an objection to a voter who should have been removed from the voter registration rolls pursuant to R.S. 18:173, or to an irregularity in the conduct of the election, which with the exercise of due diligence could have been raised by a challenge of the voter or objections at the polls to the procedure, is deemed waived. La. R.S. 18:1434.

This provision has been read to require the candidate or his representative, rather than the voter, to exercise due diligence. *Janzen v. Stickell*, 29,461 (La. App. 2 Cir. 10/9/96), 691 So. 2d 683. The burden is on the candidate to challenge possibly unqualified voters prior to votes being cast if due diligence would have allowed for the discovery of this information. *Lipsey v. Dardenne*, *supra.*

***Analysis***

The integrity of the electoral process is paramount. The citizens of the State of Louisiana are entitled to know that their elections will be handled in a trustworthy manner free of fraud, illegality, and irregularities. The one-vote margin in this election only serves to magnify the importance that elections be conducted in this manner. This should serve as a reminder

to all citizens of this state that we should never take for granted our right to vote and should always exercise that right.

For the reasons that follow, we are ultimately constrained to find no abuse of discretion in the trial court's determination that a new election is warranted in this matter. There is no dispute that this election was decided by one vote. Clearly, irregularities existed in the voting for the office of Caddo Parish Sheriff. Nickelson has established that two voters illegally voted twice in clear violation of La. R.S 18:1305. Although there is some indication that one of the voter's mail-in ballot was "pulled," no evidence was presented to confirm this fact. Likewise, Nickelson proved that four ineligible fully interdicted persons voted in the November 18, 2023, election, three in person and one by mail-in ballot.[11]

However, the main issue raised by Whitehorn in this case is whether Nickelson timely objected to these irregularities or waived his right to challenge them under the provisions of La. R.S. 18:1434. To that end, the resolution of this matter turns on the question of due diligence. We are mindful of the language of La. R.S. 18:1434, as well as the jurisprudence interpreting it.[12] With this in mind, we must agree with the trial court that in

---

[11] The trial court's misstatement regarding when these voters actually voted is of no moment. From our reading of the evidence, the three who voted in person did so by early voting.

[12] See, *Lipsey v. Dardenne*, *supra; Dumas v. Jetson*, 462 So. 2d 266 (La. App. 1 Cir. 1984); *Veuleman v. O'Con*, 417 So. 2d 131 (La. App. 3 Cir. 1982). These cases hold that under La. R.S. 18:1434, a challenge to the qualification of a voter must be at one of two times, either prior to the election, through the applicable procedural process provided by law, or at the time they vote or is waived unless the challenger can show that in the exercise of due diligence he would not have raised the challenge at those times. See also *Fontenot v. Lee*, 359 So. 2d 1071 (La. App. 3 Cir. 1978), which added that in the absence of a formal challenge or a showing of due diligence, a voter cannot be collaterally attacked in an election contest after the election has been completed.

these circumstances it would be illogical to require Nickelson to review and object to the absentee-by-mail and early vote of the two double voters and four ineligible interdicts.  While pursuant to La. R.S. 18:1311, Nickelson was entitled to review the list of absentee-by-mail and early voters, mere knowledge that these individuals initially voted by mail or absentee would not in and of itself have put him on any notice of the facts giving rise to the illegal second votes on the day of the election by the double voters.  This would also be true of the mail-in vote by the interdicted voter, especially considering Sibley's trial testimony that no interdicted voters had ever been purged from the voter rolls during his tenure.  Moreover, as to all of the interdicted voters, we view it as too onerous a burden to require a candidate to canvass the public records prior to the election for orders of interdiction and can agree with the trial court that due diligence in these matters would not require such.[13]  Likewise, to require Nickelson to object to each of these two illegal votes on the day of the election would have necessitated his omnipresence at each of the 166 precincts involved, an obvious impossibility, considering the limited number of poll watchers he is allowed.  In our view, to interpret La. R.S. 18:1424 to require that Nickelson challenge each of the illegal votes in this case on the day of the election would produce an absurd and overburdensome requirement under the law, that would effectively deny him his right to challenge these clearly illegal votes.  Thus, upon affording the trial court the broad discretion to which it is due, we find no manifest error in and decline to reverse the trial court's determination

---

[13] Perhaps that burden should fall on the registrar of voters.  We recognize this holding as being contrary to the view of the court in *Lipsey v. Dardenne*, *supra*.

that, in the exercise of due diligence, Nickelson would not have been able to discover prior to or at the polls, that challenges to the double voters or ineligible interdicted persons existed. Considering the one-vote margin between the candidates, the invalidation of these six votes is alone sufficient to make it legally impossible to determine the result of the election. Thus, review of the remaining votes is unnecessary and pretermitted.[14]

Additionally, we reject Whitehorn's argument in brief that Nickelson was required to "introduce compelling evidence that is sufficient to change the result of the election," and that the trial court "failed to consider this paramount requirement." In *Atkins v. Huckabay, supra*, the Louisiana Supreme Court evaluated a similar case, invalidated five votes in an election contest which concerned a three-vote margin, and there ordered a new election under La. R.S. 18:1432, because "it is impossible to determine the results of this election." We adhere to that precedent for review of this matter. Because under that analysis, we have found that the invalidation of the six illegal votes is sufficient to make it legally impossible to determine the result of the election, it is unnecessary for us to address Whitehorn's remaining arguments that Nickelson was required to present evidence that the offending voters voted for the office of sheriff and had waived their privilege of voter secrecy[15] or that he is entitled to an adverse presumption because no voters were called to testify.

---

[14] A review of those votes, however, clearly shows that they were not witnessed and should not have been counted.

[15] See La. C.E. art. 512.

For the reasons set forth above, we affirm the judgment of the trial court.  Costs of this appeal are assessed to Whitehorn.

AFFIRMED.

**COX, J., concurs with written reasons.**

I agree with the majority opinion that the trial court should be affirmed. Even if we do not consider the four votes cast by the interdicts, who should not have been allowed to vote, the two voters who voted twice could have changed the outcome of the election. We have no way of knowing if the persons who cast these votes voted for the same candidate each time they cast their ballots or differently the next time they cast their ballots. Our Constitution guarantees the secrecy of ballots; therefore, it would not have been proper for the trial court to require these individuals to testify regarding their votes. These two voters who voted twice make it impossible to determine accurate results in this election, especially given the one-vote margin. In light of this case, I believe our legislature should review our election code in order to address future challenges caused by illegally cast votes.

**STONE, J., dissents with written reasons.**

I respectfully dissent from the majority opinion.

There can be no democracy without free and fair elections. To that end, the Louisiana legislature has adopted an elections code to provide and assure the citizens of our state the right the vote and the process by which all elections shall be conducted. Included in the elections code are procedural safeguards to assure election integrity. The elections code is unabridged and must be read and interpreted in that manner. Otherwise, to hodgepodge the elections code would demean the entire process.

The trial court abused its discretion in finding that Nickelson satisfied his burden to show that he exercised due diligence in challenging the 11 voters at issue and in ordering a new election. In my view, and as argued by Whitehorn, this case turns on the issue of whether Nickelson timely objected to the irregularities at issue or waived his right to challenge them under the provisions of La. R.S. 18:1434. To that end, the resolution of this matter turns on the question of due diligence. La. R.S. 18:1434 has long read as follows:

> An objection to the qualifications of a voter, except for an objection to a voter who should have been removed from the voter registration rolls pursuant to R.S. 18:173, or to an irregularity in the conduct of the election, which with the exercise of due diligence could have been raised by a challenge of the voter or objections at the polls to the procedure, is deemed waived.

The jurisprudence interpreting this provision requires that voter challenges must be formally raised, through the applicable procedural methods provided by the legislature, either before the election or at the polls, unless the challenger shows that in the exercise of due diligence, he or she

1

could not have raised the challenge.  Indeed, in *Veuleman v. O'Con*, 417 So. 2d 131 (La. App. 3 Cir. 1982), the appellate court stated:

> Jurisprudence . . . holds that voters who have not properly registered and qualified to vote must be formally challenged either before or at the time they offer to vote.  In the absence of a formal challenge according to the statutory procedure, the qualification of a voter cannot be collaterally attacked in an election contest after the election has been completed.[16]

The obvious legislative intent underlying La. R.S. 18:1434 is to allow all voter and election challenges to be resolved prior to the finality of the election, with a limited exception in cases where the election contest plaintiff shows that he could not have discovered the grounds for the challenge with the exercise of due diligence.  The sanctity and finality of votes and elections is protected by these provisions and jurisprudence.  The jurisprudence has also placed the burden of proving due diligence on the challenger.  *Lipsey v. Dardenne*, *supra*; *Meyer v. Keller*, *supra*.

The finality of election results is a paramount consideration.  In this matter, the trial court specifically found on more than one occasion that Nickelson could not have known about the in-person illegal votes "until the day of the election," but did not address the

_____

[16] See also, *Lipsey v. Dardenne*, 07-1487 (La. App. 3 Cir 11/29/07), 970 So. 2d 1237*; Dumas v. Jetson*, 462 So. 2d 266 (La. App. 1 Cir. 1984); *Timberlake v. Lindsey*, 140 So. 2d 406 (La. App. 3 Cir. 1962).  These cases hold that under La. R.S. 18:1434, a challenge to the qualification of a voter must be at one of two times, either prior to the election or at the time they vote or is waived unless the challenger can show that in the exercise of due diligence he would not have raised the challenge at those times.  *Fontenot v. Lee*, 359 So. 2d 1071 (La. App. 3 Cir. 1978), added that in the absence of a formal challenge or a showing of due diligence, a voter cannot be collaterally attached in an election contest after the election has been completed.

issue of why Nickelson could not have, with due diligence, challenged the votes at the polls as required by La. R.S. 18:1434.[17] Further, the trial court made no due diligence determination regarding any of the absentee and mail-in ballots at issue, including the five faulty mail-in ballots and the one interdicted voter who voted by mail.[18] Yet, La. R.S. 18:1315 *requires* that challenges to absentee by mail votes be made four days before the election or at the time of tabulation and counting of those votes.

On this record, there appears to be no dispute that Nickelson did not lodge any challenge to any of the offending votes prior to the election or at the polls. Pursuant to the clear wording of La. R.S. 18:1434, his failure to do so waived any further objection by him to absentee and early votes by mail unless he established that with the exercise of due diligence, he could not have raised such challenges. Based upon the jurisprudence cited herein, Nickelson was *required* to present affirmative proof regarding the issue of due diligence under La. R.S. 18:1434, for both types of votes. Yet in proof of his case, Nickelson offered no evidence whatsoever relating to the due diligence inquiry, i.e., evidence showing what prevented him from first utilizing the procedural methods in place for challenging the votes at issue prior to the election or at the polls in compliance with La. R.S. 18:1434. Rather, it was the trial court who supplied and resolved the due diligence

---

[17] Unfortunately, the trial court mistakenly concluded that all four of the interdicted voters voted in person.

[18] *Lipsey v. Dardenne*, *supra*, specifically held that the failure to object to the qualification of an interdicted voter who had been interdicted for a substantial period of time, had been waived by the candidate who had filed his challenge in compliance with La. R.S 18:1434.

inquiry in his written judgment, with no affirmative proof, as the majority now does in its opinion. The trial court abused its discretion in resolving the issue of due diligence in favor of Nickelson. In these circumstances, Nickelson has failed to satisfy his burden to show that the challenges were not waived under La. R.S. 18:1434. The judgment of the trial court should be reversed and the November 18, 2023, election results should be reinstated.[19] To do otherwise, could be considered or construed by some to be a systemic unwarranted attack on the Louisiana elections process.

---

[19] It is unnecessary to address Whitehorn's remaining arguments including Nickelson's failure to call the subject voters to the stand to testify. La. C.E. art. 512 confirms the privilege to refuse to disclose the tenor or a vote by secret ballot, unless the vote was cast illegally.

**HUNTER, J., dissenting.**

In a time where elections and election integrity are increasingly coming under heavy bipartisan fire, this Court should be careful to safeguard, and when necessary, refrain from tossing the accelerant of every closely contested election to the log pile of controversy, further stoking such divisive flames.

A fundamental principle of American and Louisiana law is that it is the casting of the votes or ballots, unimpeded by force or fraud, which determines with use the result of elections. The laws, the police regulations, which are, or should be, always framed to secure fair elections and a fair polling, count, and report of the votes are merely subsidiary to that end to be attained. It is in the power of no officer or set of officers to substitute their own will for the votes and will of the people, and wherever this has been done, it is the duty of the courts where properly appealed to not only to enter upon the inquiry, but to award the right and undo the wrong, and, if need be, to punish the guilty. *Webre v. Wilton*, 26 La. 610 (La. 1877).

It is virtually impossible to conduct an election without some irregularities and illegalities taking place, but where conducted in good faith, free of fraud or intention of wrongdoing, full faith and credit will be given the result. Therefore, before a candidate, defeated on the face of the returns, has the right to judicially challenge the declared result of the election, he must allege irregularities of such character and/or fraud in connection therewith, which, if true, encompassed his defeat. *Beard v. Henry*, 199 So. 468 (La. App. 2 Cir. 1940).

1

Cases such as this provoke discussion of the ever-evolving convergence of law, politics, policy, science, societal interests, and competing constitutional considerations. As a result, such cases can and often do resonate as matters of broader significance and sweep than the narrow facts and circumstances under which the cases arise, with multiple outside interests weighing in on the issues presented, each side vying to be declared the victor in a contest of competing societal concerns. In this maelstrom of competing interests, the role of the court must be kept in mind. Cf. *Cassell v. Snyders*, 990 F. 3d 539 (7th Cir. 2021)

All government originates with the people, is founded on their will alone, and is instituted to protect the rights of the individual for the good of the whole. La. Const. Art. I, § 1. As judges, we have no more solemn duty than to protect the fundamental rights reserved by the people from government overreach. *State v. Spell*, 21-00876 (La. 5/13/22), 339 So. 3d 1125. That role is not to declare a "winner" or "loser" but to make reasoned, unbiased decisions on the application of the law to the facts before the court. Cases do not arise and are not decided in a vacuum. Each case must be decided on the unique facts presented. While in the process of deciding cases, courts must weigh various considerations dictated by competing constitutional or statutory provisions; that weighing does not occur in the absence of a factual record informing those considerations. *Id*.

Courts apply laches in election cases. *King v. Whitmer*, 505 F. Supp. 3d 720 (E.D. Mich. 2020), *appeal dismissed*, 2021 WL 688804 (6th Cir. 2021). Application of laches in election cases requires relators to exhibit extreme diligence and promptness. *State ex rel. Dunn v. Plain Loc. Sch.*

2

*Dist. Bd. of Educ.*, 2020-Ohio-40, 158 Ohio St. 3d 370, 143 N.E. 3d 488.

Laches may bar relief in an election-related matter if the person seeking

relief fails to act with the utmost diligence. *State ex rel. Save Your*

*Courthouse Comm. v. City of Medina*, 2019-Ohio-3737, 157 Ohio St. 3d

423, 137 N.E. 3d 1118.

I believe the trial court abused its discretion in finding Nickelson

exercised extreme due diligence and promptness in challenging the 11 voters

at issue and in ordering a new election. In my view, and as argued by

Whitehorn, this case turns on the issue of whether Nickelson timely objected

to the irregularities at issue or waived his right to challenge them under the

provisions of La. R.S. 18:1434. To that end, the resolution of this matter

turns on the question of due diligence. La. R.S. 18:1434 has long provided

as follows:

> An objection to the qualifications of a voter, except for an objection to
> a voter who should have been removed from the voter registration
> rolls pursuant to R.S. 18:173, or to an irregularity in the conduct of the
> election, which with the exercise of due diligence could have been
> raised by a challenge of the voter or objections at the polls to the
> procedure, is deemed waived.

The enduring jurisprudence interpreting this provision requires that

voter challenges must be formally raised, through the applicable procedural

methods provided by the legislature, either before the election or at the polls,

unless the challenger shows that in the exercise of due diligence, he or she

could not have raised the challenge. In *Veuleman v. O'Con*, 417 So. 2d 131

(La. App. 3 Cir. 1982), the appellate court stated:

> Jurisprudence . . . holds that voters who have not properly
> registered and qualified to vote must be formally challenged
> either before or at the time they offer to vote. In the absence of
> a formal challenge according to the statutory procedure, the

qualification of a voter cannot be collaterally attacked in an election contest after the election has been completed.[20]

The obvious legislative intent underlying La. R.S. 18:1434 is to allow all voter and election challenges to be resolved prior to the finality of the election, with a limited exception in cases where the election contest plaintiff shows that he could not have discovered the grounds for the challenge with the exercise of due diligence. Certainly, the sanctity and finality of votes and elections is protected by these provisions and jurisprudence. The jurisprudence has also placed the burden of proving due diligence on the challenger. *Lipsey v. Dardenne*, *sup*ra; *Meyer v. Keller*, *supra*.

The finality of election results is a paramount consideration. In this matter, we must first observe the trial court specifically found on more than one occasion Nickelson could not have known about the in-person illegal votes "until the day of the election," but failed to address the issue of why Nickelson could not have, with due diligence, challenged the votes at the polls as required by La. R.S. 18:1434.[21] Further, the trial court made no due diligence determination regarding any of the absentee and mail-in ballots at issue, including the five faulty mail-in ballots and the one interdicted voter

---

[20] See also, *Lipsey v. Dardenne*, *supra; Dumas v. Jetson*, 462 So. 2d 266 (La. App. 1 Cir. 1984); *Timberlake v. Lindsey*, 140 So. 2d 406 (La. App. 3 Cir. 1962). These cases hold that under La. R.S. 18:1434, a challenge to the qualification of a voter must be at one of two times, either prior to the election or at the time they vote or is waived unless the challenger can show that in the exercise of due diligence he would not have raised the challenge at those times. *Fontenot v. Lee*, 359 So. 2d 1071 (La. App. 3 Cir. 1978), added that in the absence of a formal challenge or a showing of due diligence, a voter cannot be collaterally attached in an election contest after the election has been completed.

[21] Unfortunately, the trial court mistakenly concluded that all four of the interdicted voters voted in person.

4

who voted by mail.[22]  Yet, La. R.S. 18:1315 requires that challenges to absentee by mail votes be made four days before the election or at the time of tabulation and counting of those votes.

On this record, there is no dispute Nickelson did not lodge any challenge to any of the offending votes prior to the election or at the polls. Pursuant to the clear wording of La. R.S. 18:1434, his failure to do so waived any further objection by him to these votes unless he established that with the exercise of due diligence, he could not have raised such challenges. Based upon the jurisprudence cited herein, Nickelson was required to present affirmative proof regarding the issue of due diligence under La. R.S. 18:1434, for both types of votes.  Yet, in proof of his case, Nickelson offered no evidence whatsoever relating to the due diligence inquiry, *i.e.* evidence showing what prevented him from first utilizing the procedural methods in place for challenging the votes at issue prior to the election or at the polls in compliance with La. R.S. 18:1434.  Today, the majority, recognizing its opinion is "contrary to the view of the court in *Lipsey*," has erroneously concluded "it is too onerous a burden to require a candidate to canvass the public records prior to the election for orders of interdiction . . . and due diligence in these matters would not require such."  Simply put, Nickelson did absolutely nothing to challenge the early voting process until he lost the election.  Therefore, he has failed to satisfy his burden to show that the challenges were not waived under La. R.S. 18:1434.

---

[22] So too, I note specifically relating to the interdicted persons' votes is the case of *Lipsey v. Dardenne*, *supra*, which specifically held that the failure to object to the qualification of an interdicted voter who had been interdicted for a substantial period of time, had been waived by the candidate who had filed his challenge in compliance with La. R.S 18:1434.

5

In *Rupp v. Schedler*, 11-1716 (La. App. 4 Cir. 12/9/11), 81 So. 3d 120, following an election, a candidate challenged the election arguing 44 voters, all of whom voted during the early, were unqualified to vote in the race. The trial court found the challenges to the votes was untimely and, therefore, waived. The court of appeal affirmed stating:

> Under similar circumstances, courts have found that a candidate's failure to follow the mandated procedure of the Election Code to raise concerns regarding voting prior to or during the election resulted in a waiver.

*Id.*, at 122 (citations omitted).

Similarly, in *Lipsey*, *supra*, an unsuccessful candidate for sheriff contested an election challenging the qualifications of certain voters, one of which was the subject of a full interdiction. Following a three-day trial, the trial court dismissed the petition to contest the election. The court of appeal affirmed, stating:

> The trial court correctly recognized that the Election Code requires that challenges to voter qualifications or to irregularities in the conduct of an election be made either before or during an election. The only exception to this is for objections to voters who should have been removed from the voter registration rolls due to death. The burden is on the candidate to challenge possibly unqualified voters prior to votes being case if due diligence would have allowed for the discovery of this information. A candidate is not allowed to await the outcome of an election and, if unsuccessful, then object to voter qualifications.
> ***
> None of his challenges was to registered voters who should have been removed from the voter rolls due to death.
> ***

*Id.*, at 1241-42. With regard to the interdicted voter, the court stated, "[Ms. Hawks] had been the subject of a judgment of interdiction since 1988. With due diligence, her qualifications to vote on this basis could have been

6

challenged prior to the election." *Id*. at 1245. Since the candidate who filed election suit put on no evidence to show what diligence, if any, was used by the candidate to learn of sufficient facts on which to challenge voters, nor did he take the stand to state why he could not discover the facts prior to election, the presumption was that candidate knew of the facts or made no effort to learn them until after the election. See, *Dumas v. Jetson*, 462 So. 2d 266 (La. App. 1 Cir. 1984).

An example of due diligence was opined in the below case whereby a prospective candidate for city council was not barred by laches from filing expedited election action for **writ of mandamus to require** county board of elections to place her name on general election ballot, even if candidate waited five business days to file action after learning of board's rejection of her nominating petition; five days was not an unreasonable delay, and commencement of absentee voting did not prejudice board since absentee-ballot deadline would have passed no matter how quickly candidate brought action. *State ex rel. Davis v. Summit Cty. Bd. of Elections*, 2013-Ohio-4616, 998 N.E. 2d 1093 (Ohio 2013) (emphasis added). In the oral arguments, counsel for Nickelson admitted they were placed on notice of a potential prohibition to access ballots. Taking this admission as true, this served as the moment they should have exercised due diligence and sought court intervention.

The final judgment in an election contest shall declare the election void if: (1) it is impossible to determine the result of the election; (2) the number of qualified voters who were denied the right to vote by the election officials was sufficient to change the result in the election, if they had been

7

allowed to vote; (3) the number of unqualified voters who were allowed to vote by the election officials was sufficient to change the result of the election if they had not been allowed to vote; or (4) a combination of the factors referred to in (2) and (3) would have been sufficient to change the result if they had not occurred. La. R.S. 18:1432.

The general rule is that where the electors have had a fair and free opportunity to express their will at the polls, and have done so, the result of their choice will not be set aside because of the failure of a ministerial officer to perform some duty imposed upon him by law. *Meyer v. Keller*, *supra*; *Champagne v. Ackal*, 256 So. 2d 483 (La. App. 3 Cir. 1972).

In *Meyer v. Keller*, *supra*, the candidate lost the election by four votes. He contested the election and requested a recount of the absentee ballots. A subsequent recount revealed one absentee ballot cast for the challenger had not been counted in the original tally. Thereafter, the trial court examined the ballots and disallowed six absentee ballots in which the votes were cast for the opponent. However, rather than declaring the challenger the winner, the trial court ordered a new election. Quoting *Moreau v. Tonry*, 339 So. 2d 3 (La. 1976), the court of appeal stated, "The statutory rule in Louisiana is that an election may be upset only if the one contesting the election can show that but for irregularities or fraud, he would have been nominated." *Meyer v. Keller*, 376 So. 2d at 639. In this case, the lower court failed to take the requisite steps necessary to determine the winner of the election.

We shall assume, arguendo, the factual determinations made by the trial court in this case are correct. The issue to be decided by this court, then, is whether the trial court's decision to call for a new election is

8

mandated by these facts as applied to the statutes governing elections in this state as interpreted by our jurisprudence. *Arvie v. Skinner*, 98-1769 (La. App. 3 Cir. 11/24/98), 722 So. 2d 90, *writ denied*, 98-2935 (La. 12/3/98), 731 So. 2d 270. In *Arvie*, *supra*, the court concluded the challenger failed to carry his burden of proving the election result would have been different but for irregularities in voting. The court stated:

> The above situation stands in stark contrast to the scenario presented to this court in *Fanara v. Candella*, 94-491 (La. App. 3 Cir. 4/18/94); 640 So.2d 406, *writ denied*, 94-991 (La. 4/21/94); 641 So. 2d 203. In an election determined by a two-vote margin of victory, the plaintiff therein had proven that not only two other votes were inappropriately counted, but also that seventeen voters were illegally given assistance in voting despite objections having been raised at the time of the occurrences on election day. Thus, the *Fanara* decision offers no help to plaintiff in the instant case.

> We would point out that by no means does this court condone the activities detailed in the trial court's reasons for ruling. To the contrary, we note that such activities can form the basis for civil and criminal liability. *Davis v. McGlothin*, 524 So. 2d 1320 (La. App. 3 Cir.1988); *writ denied*, 525 So. 2d 1046 (La. 1988). However, we do not find that the irregularities in this case are of so pervasive a nature as to warrant the nullifying of the election. More precisely, plaintiff has failed to carry the burden of showing that but for these activities, the outcome of the election would have been different. Having reached this conclusion, Arvie's answer to the appeal must, likewise, be denied.

*Id*., at 94.

Herein, Nickelson argues the complained of irregularities in the election "could have" affected the outcome of the election. There is no allegation or proof the irregularities in this case were so pervasive a nature as to warrant the nullification of an election. Further, Nickelson has failed to prove but for the irregularities, the outcome of the election would have been different.

9

Accordingly, I would reverse the judgment of the trial court and reinstate the results of the November 18, 2023 election as the truest and highest reflection of the will of the people and the thankless efforts of the Secretary of State and all local election officers.

For these reasons, I dissent.